UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH L. SCHROCK

               Plaintiff,          CASE NO.

V

                                    HON.

UNITED BANK FINANCIAL
CORPORATION, KARA VUGTEVEEN,
and MELODIE NIEMCZYK,

Jointly and Severally, Defendants.

---

Marlo D. Bruch (P70362)
Attorney for Plaintiff
Bruch Law Offices, PLLC
5955 West Main Street
Kalamazoo, Michigan 49009
Tele:  (269) 312-8169
Fax:   (269) 743-1181
mdbruch@bruchlawoffices.com

---

There is currently pending civil action arising out of this transaction / occurrence alleged in this Complaint in the State of Michigan, 48th Judicial Circuit, Allegan County Circuit Court, Case No: 2020-62886-CD, with the same named Defendants that has not been served / no attorney appearance has been filed for Defendants and will be voluntarily withdrawn without prejudice after the filing of this Verified Complaint on November 9, 2020.

**<u>PLAINTIFF'S VERIFIED COMPLAINT</u>**

      NOW COMES Plaintiff, Deborah L. Schrock, by and through her attorney, Bruch Law Offices, PLLC, and for her Complaint against Defendants, Melodie Niemczyk ("Niemczyk"), Kara Vugteveen ("Vugteveen"), and United Bank Financial Corporation ("United Bank") states as follows:

1

## INTRODUCTION

This is a Complaint against Schrock's former employer, United Bank, Niemczyk, Schrock's Direct Supervisor, and Vugteveen, Schrock's Regional Manager, who whole or in part made the decision to terminate Schrock.  During her employment, Schrock's employer and management subjected Schrock to an age discriminatory and hostile work environment based upon being an older employee who was falsely accused of fraudulently altering documents to gain earnings she was not legally entitled to terminate her so she could be replaced by a substantially younger employee (a comparator who did not have the same experience or knowledge as Plaintiff).  Upon information and belief, immediately after the alleged investigation and Schrock's termination and up to the date of the filing of this lawsuit, defamatory statements are/were made to lower level employees regarding this false alleged incident that has permanently and irreparably damaged Schrock's personal and professional reputation in the local community and has not been able to gain new employment. Therefore, the employer is not entitled to a qualified privilege regarding Schrock's termination.  The termination was intentional and the employer is also not entitled to protection under the business judgment rule.

## PARTIES AND JURISDICTION

1. This is an action for Count I- Violation of Age in Discrimination Act of 1967 ("ADEA") as amended.

2. Plaintiff, Deborah L. Schrock, is a citizen and resident of Allegan County, Michigan.

3. Defendant Melodie Niemzyck is employed by United Bank and was the Direct Supervisor of Plaintiff who participated in her termination.

4. Defendant Kara Vugteveen is employed by United Bank and was the Regional Manager who participated in her termination.

5. Defendant United Bank Financial Corporation is a Michigan for profit corporation doing business at 102 West Main Street, Hopkins, Michigan 49328 where Plaintiff worked, located in Allegan County, Michigan. United Bank's Resident Agent is located at 900 East Paris Avenue, SE, Grand Rapids, Michigan 49546.

6. Defendant Employer was and is an "employer" as defined by the Age Discrimination in Employment Act of 1967, as amended.

7. The basis for this Court's jurisdiction is proper pursuant to 28 U.S.C. §1331.

8. Jurisdiction and venue are proper in this Court, as Defendant United Bank is doing business in Allegan County, Michigan; Plaintiff was employed in Allegan County Michigan with Defendant and is thus subject to the Court's personal jurisdiction and venue due to the nature of her employment agreements and personnel file.

9. The events giving rise to this cause of action occurred in Allegan County, Michigan.

10. The amount in controversy exceeds $75,000 exclusive of interest, costs and attorney fees and this matter is otherwise within the jurisdiction of this Court.

**RELEVANT AND PERTINENT FACTS**

11. Plaintiff reincorporates by reference the previous paragraphs of the Complaint as though fully set forth herein, word for word and paragraph for paragraph.

12. On or about August 2001, Schrock was hired by Leanna Rollins, Hopkins Branch Manager, to be a part time customer service representative.

13. In 2002, Schrock was promoted to a full-time employee by Leanna Rollins, who was still the Hopkins Branch Manager.

14. Later in 2002, Schrock was promoted to vault teller at the Hopkins Branch by Leanna Rollins, who was still the Hopkins Branch Manager.

15. In April 2005, Leanna Rollins transferred to the Gun Lake Branch of United Bank and Julie DeHaan was promoted to the Hopkins Branch Manager.

16. On April 30, 2005, Schrock was promoted to the Hopkins Assistant Branch Manager by Julie DeHaan, who remained the Branch Manager.

17. In November 2018, Julie DeHaan, the Hopkins Branch Manager, retired and Melodie Niemczyk, transferred from as the Branch Manager at the Dorr location of United Bank to the Hopkins Branch as the new Branch Manager.

18. Schrock's employment was very rewarding and enjoyable until Melodie Niemczyk, the new Hopkins Branch Manager, was hired. Schrock was never very comfortable around her. Niemczyk on more than one occasion told Schrock and other employees that "she could lie to the customers with a straight face to get sales."

19. Upon information and belief, Schrock did her best but after Niemczyk became her Direct Supervisor it was apparent that there was a target on her back due to her age.

20. In January 2019, Schrock e-mailed Kara Vugteveen, Retail Management/Regional Manager, (who also headed the bi-monthly meetings of assistant managers, as of August 2017) regarding the monthly incentive reports.

21. Schrock had been filing these reports out since June 2005 when she became the Hopkins Branch Assistant Manager.

4

22. Schrock requested that they discuss how to fill out this form correctly since they had so many new assistant branch managers. Many new assistant branch managers also were not sure exactly how to fill out the form. On the form the employee would enumerate the type of checking/savings account the customer would have opened during the month. This form had a formula for incentive pay. The employee(s) would also list if the customer had been set up for auto pay, loans that were processed, or affiliate referrals that may have been made.

23. Schrock had never been formally instructed what to do with this form, but just filled it out to the best of her abilities.

24. There were no written instructions or details of what each category entailed.

25. On this report the assistant branch managers ("ABM") would list how many and what type of accounts they had opened or loans they had processed.

26. The ABM's would also list if they had directed customers/potential customers what to do regarding direct deposit or auto pay of bills, etc.

27. Vugteveen said that it was a good suggestion, but nothing became of it.

28. In March 2019, Vugteveen sent an email to all ASM's regarding new procedures for submitting their monthly incentive reports.

29. The Branch Manager and ABM was supposed to meet, go over reports, and submit them together to the retail management department (Vugteveen).

30. Niemczyk, as Hopkins Branch Manager, and Schrock met in April 2019 to go over their March 2019 report and submitted it. For the past ten years prior to

Niemczyk, Schrock had been filling out sales reports and never had been formally told how to fill them out and no one in management ever questioned how she filled them out.

31. Nothing was said about Schrock's March 2019 entry for direct deposit looking wrong.

32. Niemczyk did not meet with Schrock in May or June 2019 to go over reports due to scheduling conflicts.

33. Schrock gave her reports to Niemczyk to approve and to submit with hers.

34. It was Niemczyk's responsibility to look over Schrock's reports to see if anything looked out of line before she submitted them.

35. Some months Schrock did get incentive pay but most months the cross-selling wasn't sufficient for her to get any incentive pay.

36. In June 2019, Schrock had her annual review with Niemczyk.

37. Nothing negative was brought up in Schrock's written performance review including she received "meets expectations or exceeds them" and received an increase in her salary.

38. Niemczyk thanked Schrock for her work in the Hopkins Branch and helping her with the transition to the Hopkins Branch.

39. On June 30, 2019, Brenda Johnson, head of United Bank Human Resources, and Vugteveen came into Hopkins Branch late in the afternoon and asked to speak with Schrock in the manager's office.

40. Vugteveen asked Schrock about information on her May 2019 Sales Incentive Report, specifically the line item of direct deposits.

6

41. Schrock told Vugteveen that she included on the report all customers that she provided the information for them to sign up for direct deposit with their employer.

42. Schrock told Vugteveen that she did not follow up to see if they had actually signed up. Schrock told her, "if I failed to do that, I didn't know it was a requirement for the report." (The issue in question was regarding "direct deposit.") That is also listed on the form with no explanation of why it was on there. Schrock took it to mean that all customers who opened accounts for which she provided information to them explained to them how to set up the direct deposit with his/her employer.

43. United Bank has made alleged claims that Schrock falsified these documents and compromised the bank/customer relationship with no explanation of what that possibly could have been.

44. Schrock never set up the direct deposit but just gave the customer the information on how to do it. United Bank has made false claims that some of the customers that Schrock indicated were going to set up direct deposit never did.

45. That was not Schrock's responsibility as she has no knowledge of who at the bank had the actual role of setting up the direct deposit accounts for the customers.

46. Schrock told Johnson and Vugteveen that she did not falsify any information and if something on the report they considered erroneous it was not done with malicious intent but through lack of direction. Schrock also told them this is how she had filled out the report in the past several years and hadn't heard that it was wrong from Niemczyk.

47. After discussion of this matter, Schrock felt they were just talking in circles, so she asked, "if are you here to fire me, let's get it done."

48. Brenda Johnson stated that "today was [Schrock's] last day with United Bank due to [her] falsifying information".

49. Schrock was allowed to empty her desk of personal items but all work files were retained on her United Bank "drive" that access was immediately cancelled to her. Schrock also, no longer had access to her payroll records. After termination, Schrock requested a copy of her last pay stub from Human Resources, which she received, so that she had her last 2019 W-2.

50. Schrock did not have access of any specifics because all of her records were kept by United Bank until after her termination when she requested her personnel file under the state of Michigan's Bullard-Plawecki statute.

51. Upon information and belief, Niemczyk and Vugteveen and other upper level employees made unprivileged communications to Plaintiff's former lower level co-workers that were not legally entitled under any employer qualified privilege.

52. Upon information and belief, Niemczck and Vugeveteen, while acting inside and outside the scope of their official capacities as Plaintiff's direct Supervisor / management at United Bank but with the imprimatur of their positions, had communicated to other persons in their employ and third-party administrative agencies that Plaintiff has engaged in fraudulent actions in the workplace which are false.

53. United Bank and its upper level management are and/or individually named Defendants were aware of these false accusations and participated in Plaintiff's unlawful termination anyways.

8

54. Schrock has demanded that named Defendants and other upper level management to retract their statements in the same manner as presented to lower level employees and third-party administrative agencies with no such action being taken.

### SCHROCK'S APPLICATION FOR MICHIGAN UNEMPLOYMENT BENEFITS AND HER UNITED BANK PERSONNEL FILE

55. Plaintiff reincorporates by reference the previous paragraphs of the Complaint as though fully set forth herein, word for word and paragraph for paragraph.

56. Schrock filed for unemployment the week following her termination.

57. Schrock was unlawfully denied benefits by the UIA because United Bank lied and stated she falsified information and therefore wasn't qualified for unemployment. (United Bank protested stating that she omitted or falsified important information on company records).

58. Schrock did not appeal the UIA ruling or the United Bank termination since she did not know the proper way to do it. The United Bank handbook was digital on UB intranet that explains termination procedures. Schrock no longer had access after termination.

59. Since then, Schrock has been looking for employment in her related field with no success after numerous applications due to the false reason she was terminated for.

60. On September 24, 2019, Schrock requested a complete copy of her personnel file pursuant to the State of Michigan Bullard Plawecki Act.

61. She received it stuffed with litigation false materials to defame her personal and professional reputation.

62. Schrock noticed later on the corrective action report that United Bank wrote up the termination as a break-down in communication between employee and employer.

63. Most of Schrock's personnel file contained old dated correspondence from her hire date or other non-relevant information.

64. Missing were some of her performance reviews (PMR's) and other accolades of her achievements at United Bank.

65. Schrock met with her former manager, Julie DeHaan, who retired on or about November 2018. She had to fill out the same incentive report Schrock did. She became the branch manager about 3 months before Schrock became the assistant manager. She told Schrock that Nancy Martin, supervisor of all managers and assistants when they were promoted, gave them some instructions regarding filling out the incentive form. Nancy Martin told them that if they mentioned that United Bank had "direct deposit" regarding the account they were opening for the customer they could include that as a "sale" on their incentive report.  It is apparent that Schrock was not the only employee that offered this to her customers but provided them with the information to set up direct deposit following the guidelines she had been given.  No notification was ever given to change this.  The two new supervisors named as Defendants in this lawsuit worked under Nancy Martin. There was only one assistant branch manager, Annette Dever, who has been at United Bank as long as Schrock, who would have been trained by Nancy Martin in filling out this report. The other branch assistants were new to United Bank after Nancy Martin's retirement, and Schrock was not involved in how they were trained or discuss with other branch assistants how to fill out the incentive form as Schrock felt that was confidential information.

66. Plaintiff had suffered economic losses and emotional distress as a result of the age discrimination directly related to her termination.

67. Plaintiff had a meeting with United Bank and its decision-making representatives to resolve the issues to no avail prior to being terminated.

68. Plaintiff received her EEOC Notice of Right to Sue on October 2, 2020 (EEOC Charge No. 23A-2020-00007) and has timely filed her lawsuit.

## COUNT I
## AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA)

69. Plaintiff incorporated by reference paragraphs 1 through 68.

70. At all material times, Plaintiff was an employee, and Defendants were her employer, covered by and within the meaning of the Age Discrimination in Employment Act (ADEA).

71. Plaintiff's age was at least one factor that made a difference in Defendants' decision to terminate Plaintiff and make a false reason so they could fire her and disallow her from obtaining unemployment benefits.

72. Plaintiff was not given the same favorable treatment as a younger female employee (less qualified comparator) who took Plaintiff's job after her termination.

73. Defendants, through their agents, representatives, and employees, were predisposed to discriminate based on age and acted in accordance with that predisposition.

74. Defendants, through their agents, representatives, and employees, treated Plaintiff differently from similarly situated younger employees in the terms and conditions of employment.

75. Defendants' actions were intentional in disregard for Plaintiff's rights and sensibilities.

76. Defendants have violated the ADEA on the basis of Plaintiff being an older female replaced by a younger female that was "cherry picked" due to her former supervisor's friendship with the comparator replacement who did not have the experience or seniority of Plaintiff.

77. Based upon the facts, Schrock has a *prima facie* case of age discrimination as she was terminated for alleged unacceptable work performance (alleged falsification of bank forms). Upon information and belief, other similarly situated employees followed the same process and have not been disciplined or terminated. Schrock was age 65 at time of termination and intended to work at United Bank until she would have retired at age 70.

78. Schrock has been replaced by a woman under the age of 30.

79. Schrock's termination is pretext as the reason for the termination and how she allegedly did not follow United Bank procedures/policies. Instead what appears to have happened is that United Bank created a false reason to terminate her employment after her being over almost eighteen (18) years as a loyal and dedicated employee.

80. Plaintiff's age was at least one factor that made a difference in Defendants' decision to terminate Plaintiff.

81. Had Plaintiff been a younger female she would not have been terminated.

82. Defendants, through their agents, representatives, and employees, were predisposed to discriminate on the basis of Plaintiff being of an older female and acted in accordance with that predisposition.

83. Defendants, through their agents, representatives, and employees, treated Plaintiff differently from similarly situated younger female employees in the terms and conditions of employment.

84.     Upon information and belief, Plaintiff was replaced with her exact job title and duties by a younger female (a lessor qualified comparator).

85.     Defendants actions were intentional and in disregard for Plaintiff's rights and sensibilities.

86.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff had sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice.

WHEREFORE PLAINTIFF REQUESTS that this Court enter judgment in her favor against Defendants in whatever amount Plaintiff is found to be entitled, together with costs and interest.

**PLAINTIFF REQUESTS** that this court enter Judgment against Defendants as follows:

1. compensatory damages in whatever amount above $75,000 she is found to be entitled;
2. exemplary damages in whatever amount above $75,000 she is found to be entitled;
3. statutory damages in whatever amount she is found to be entitled;
4. an award of lost wages and the value of fringe benefits, past and future;
5. an award of interest, costs, and reasonable attorney fees;
6. an order enjoining Defendants, their agents, representatives, and employees from further acts of discrimination;

7. an order awarding whatever other equitable relief appeared appropriate at the time of final judgment.

Deborah L. Schrock verifies that the facts stated in this Verified Complaint are true and, if sworn as a witness, she could testify with personal knowledge as to these facts.

Dated:  November 9, 2020              /s/     *Deborah L. Schrock*
                                      Deborah L. Schrock, Plaintiff


Dated:  November 9, 2020              Bruch Law Offices, PLLC


                                      By:     *Marlo D. Bruch*
                                      Marlo D. Bruch (P70362)
                                      Attorney for Plaintiff
                                      5955 West Main Street
                                      Kalamazoo, MI  49009
                                      (269) 312-8169


## PLAINTIFF'S DEMAND FOR JURY TRIAL

NOW COMES, Plaintiff, Deborah L. Schrock, and hereby requests trial by jury pursuant to FR Civ P 38(b).


Dated:  November 9, 2020

                                      By: *Deborah L. Schrock*
                                      Deborah L. Schrock, Plaintiff